UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

| | |
|---|---|
| UBALDO HERERRA-HERNANDEZ,<br><br>    Petitioner,<br><br>v.<br><br>PHILLIP VALDEZ, et al.,<br><br>    Respondents. | No. 6:25-CV-090-H |

# ORDER

Before the Court is Ubaldo Hererra-Hernandez's motion for interim protective relief. Dkt. No. 5. The Court construes the motion as a motion for a temporary restraining order. *See* Dkt. Nos. 1-2; 3 at 1; 5 at 2 ("Petitioner seeks this protective order to maintain the status quo while the Government responds to the Court's directive."). Hererra-Hernandez "asks the Court to (1) preserve jurisdiction by preventing transfer or removal from this District; (2) direct [the] [r]espondents to provide forty-eight hours' notice before any such action; and (3) consider immediate release under Alternatives to Detention (ATD) or other [less]-restrictive conditions during the pendency of these proceedings." Dkt. No. 5 at 2. He contends that this relief is warranted "under 8 U.S.C. § 1226(a)," the Immigration and Nationality Act's discretionary-detention provision. *Id.* at 5. But this argument flatly contradicts the statute's plain language and the history of legislative changes enacted by Congress. Thus, Hererra-Hernandez fails to meet the high bar for emergency relief, and the Court denies the motion.

1. **Background**

Hererra-Hernandez is a Mexican citizen who illegally entered the United States approximately two decades ago. *Id.* at 3. He has no convictions or prior arrests. Dkt. No.

1 at 4. He serves as a minister at his church and cares for his two special-needs children. *Id.* at 4–5.

The respondents detained Hererra-Hernandez in July 2025 during a routine check-in with ICE and issued him a Notice to Appear. *Id.*; Dkt. No. 1-3 at 52. Thereafter, he was sent to Bluebonnet Detention Center in Anson, Texas and later transferred to Eden Detention Center in Eden, Texas. Dkt. No. 5 at 2. In October, he applied for cancellation of removal, but his application was denied. *Id.* at 4. Hernandez filed a habeas petition and motion for TRO in this Court seeking, among other things, "immediate release on appropriate conditions or . . . an individualized bond/release hearing." *Id.* at 11.

## 2. Legal Standards

Federal Rule of Civil Procedure 65 governs the issuance of injunctions and TROs. Rule 65(a)(1) provides that "[t]he [C]ourt may issue a preliminary injunction only on notice to the adverse party." Under Rule 65(b), however, the Court may issue a TRO without notice if the moving party satisfies two requirements. First, the moving party must present "specific facts in an affidavit or a verified complaint" clearly demonstrating "that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). Second, the moving party's attorney must "certif[y] in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(B).

Additionally, a party seeking both a TRO and preliminary injunctive relief must satisfy the four-factor standard for obtaining a preliminary injunction. *Greer's Ranch Café v. Guzman*, 540 F. Supp. 3d 638, 644–45 (N.D. Tex. 2021). That standard requires the party seeking relief to establish (1) a substantial likelihood of success on the merits; (2) a

substantial threat of irreparable harm; (3) that the balance of hardships weighs in the movant's favor; and (4) that the issuance of the preliminary injunction will not disserve the public interest. *Daniels Health Scis., LLC v. Vascular Health Scis., LLC*, 710 F.3d 579, 582 (5th Cir. 2013). "[I]f a party fails to meet *any* of the four requirements, the court cannot grant the TRO or preliminary injunction." *Speed v. America's Wholesale Lender*, No. 3:14-CV-3425, 2014 WL 4755485, at *1 (N.D. Tex. Sept. 24, 2014) (emphasis in original); *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987) (explaining that "[t]he party seeking such relief must satisfy a cumulative burden of proving each of the four elements").

**3.   Analysis**

Hererra-Hernandez fails to demonstrate a substantial likelihood of success on the merits, which is fatal to his motion for a TRO. The Court recognizes, however, that it is issuing this Order under the accelerated timeframe of a motion for emergency relief. The Court has not yet had the benefit of the government's response to the petition or the petitioner's reply. The Court will, of course, consider and finally resolve Hererra-Hernandez's petition (Dkt. No. 1) only after it has the benefit of full briefing.

**A.    The Court's show-cause order is sufficient to address Hererra-Hernandez's interim concerns.**

Hererra-Hernandez first asks the Court to "preserve jurisdiction by preventing transfer or removal from this [d]istrict" and to "direct [the] [r]espondents to provide forty-eight hours' notice before any such action." Dkt. No. 5 at 2. Two pages later, however, Hererra-Hernandez confusingly admits he is aware that binding Fifth Circuit precedent establishes that "this Court retains jurisdiction even if a transfer occurs." *Id.* at 4. Indeed, it is well-established that jurisdiction over a habeas petition attaches at the time of

filing and is not destroyed by the transfer of the petitioner to a different federal district and accompanying custodial change. *See Griffin v. Ebbert*, 751 F.3d 288, 290 (5th Cir. 2014).

As for Hererra-Hernandez's concerns regarding removal from the United States, the Court issued a show-cause order requiring the respondents "to file . . . a notice addressing whether the government will commit not to remove the petitioner pending the Court's resolution of the petitioner's habeas petition." Dkt. No. 3. That same day, the respondents timely filed the required notice stating that they will "provide [the] [p]etitioner's counsel and the Court with at least three days' notice before executing any removal of [the] Petitioner from the United States," should they "obtain removal documents before this litigation concludes." Dkt. No. 4 at 1. Thus, no further action from the Court is required at this time to preserve its jurisdiction over the petition.

**B.     The text of the INA weighs heavily against Hererra-Hernandez's position regarding the availability of bond.**

Next, Hererra-Hernandez asserts that the Court can and should order a bond hearing under the INA's discretionary-detention provision, 8 U.S.C. § 1226(a).[1] Dkt. No. 5 at 5, 11. Whether the INA's mandatory-detention or discretionary-detention provision applies to Hererra-Hernandez is a question of statutory interpretation.

When the Court undertakes the task of statutory interpretation, "[t]he statutory text is invariably the first and primary consideration." *Barr v. SEC*, 114 F.4th 441, 448 (5th Cir. 2024). And if the text is "clear and unambiguous, the interpretive inquiry ends." *Id.* Hererra-Hernandez offers the Court no reason to conclude that he is covered by the text of

---

[1] Although Section 1226(c) also mandates detention for certain classes of aliens, this Order refers to Sections 1225 and 1226 as the mandatory- and discretionary-detention provisions, respectively, for the sake of simplicity.

the INA's discretionary-detention provision.  Rather, he merely notes that the respondents "fail[ed] to consider [less]-restrictive alternatives under 8 U.S.C. § 1226(a)." Dkt. No. 5 at 5.  But even construing its application broadly, that provision applies to aliens "arrested and detained" pursuant to "a warrant issued by the Attorney General."  8 U.S.C. § 1226(a); *but see Matter of Yajure Hurtado*, 29 I&N Dec. 216, 227 (BIA 2025) (finding that not "*all* aliens detained while in the United States with a warrant of arrest are detained under" Section 1226(a)).  Hererra-Hernandez, however, claims to have been "detained at a routine ICE check-in . . . not due to an alleged crime," and he states unequivocally that he "has never been arrested." Dkt. No. 5 at 3.  Without an arrest pursuant to a warrant, the Court does not see any textual basis to conclude that Section 1226 and its discretionary-detention provision applies.

  Moreover, Hererra-Hernandez offers no argument as to why the INA's mandatory-detention provision, 8 U.S.C. § 1225, does not apply to him.  Indeed, his motion makes no mention of the provision, *see* Dkt. No. 5, which applies to "applicants for admission."  8 U.S.C. § 1225(b).  Subsection 1225(a)(1) defines applicant for admission as "[a]n alien present in the United States who has not been admitted or who arrives in the United States," whether through a port of entry or otherwise.  "'When a statute includes an explicit definition, [the Court] must follow that definition,' even if it varies from a term's ordinary meaning." *Digit. Realty Tr., Inc. v. Somers*, 583 U.S. 149, 160 (2018) (quoting *Burgess v. United States*, 553 U.S. 124, 130 (2008)).  Thus, given that Hererra-Hernandez is "[a]n alien present in the United States who has not been admitted," the text of the mandatory-detention provision weighs heavily against his assertion that he is subject to discretionary detention.  § 1225(a)(1); *see also Garibay-Robledo v. Noem*, No. 1:25-cv-177, Dkt.

No. 9 at *4–6 (N.D. Tex. Oct. 24, 2025) (denying reconsideration of a TRO because the petitioner was an applicant for admission under the mandatory-detention provision); *Montoya Cabanas v. Bondi*, No. 4:25-cv-4830, 2025 WL 3171331, at *4–6 (S.D. Tex. Nov. 13, 2025) (adopting the reasoning of *Garibay-Robledo* in denying a habeas petition).

The Executive Office of Immigration Review's (EOIR) regulations, which were drafted following the Illegal Immigration Reform and Immigration Responsibility Act of 1996's (IIRIRA) enactment, confirm this understanding of the term "applicants for admission." One such regulation provides that "*[d]espite being applicants for admission*, aliens who are present without having been admitted or paroled . . . will be eligible for bond and bond redetermination." *Inspection and Expedited Removal of Aliens*, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) (emphasis added). This regulation explains that "[t]he effect of this change is that inadmissible aliens, except for arriving aliens, have available to them bond redetermination hearings before an immigration judge, while arriving aliens do not." *Id.* The clear implication of this language is that, despite possessing the authority to deny bond to broad classes of aliens, the government previously declined to exercise the full extent of its authority under the INA.

But in July 2025 DHS issued a notice titled "Interim Guidance Regarding Detention Authority for Applicants for Admission." *See Vazquez v. Feeley*, No. 2:25-CV-1542, 2025 WL 2676082, at *5 (D. Nev. Sept. 17, 2025) (describing the leaked DHS notice and noting that the government did not object to its authenticity). This notice advised that "section 235 of the [INA], rather than section 236"—that is, the mandatory-detention provision, not the discretionary-detention provision—"is the applicable immigration detention authority for all applicants for admission." *ICE Memo: Interim Guidance Regarding Detention Authority for*

– 6 –

*Applications for Admission*, AILA Doc. No. 25071607, Am. Immigr. Laws. Ass'n (July 8, 2025).[2] The BIA adopted this broader application of the mandatory-detention provision in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). The BIA acknowledged that "for years Immigration Judges have conducted bond hearings for aliens who entered the United States without inspection," but they did "not recall either DHS or its predecessor, the Immigration and Naturalization Service," ever challenging that practice. *Id.* at 225 n.6.

> **B.  The statutory history of the INA supports the Court's interpretation of the mandatory-detention provision.**

"Statutory history, 'the record of enacted changes Congress made to the relevant statutory text over time,' can also provide helpful context" for interpreting statutory language. *United States v. Moore*, 71 F.4th 392, 395 (5th Cir. 2023) (quoting *BNSF Ry. Co. v. Loos*, 586 U.S. 310, 329 (2019) (Gorsuch, J., dissenting) (emphasis omitted)). And the statutory history of the INA confirms the Court's interpretation of the term "applicants for admission."

By enacting the IIRIRA, Congress sought to replace the so-called entry doctrine, in which the manner of immigration proceedings turned on whether an alien had entered the country, with a process based on admission. *See Martinez v. Att'y Gen.*, 693 F.3d 408, 413 n.5 (3d Cir. 2012) ("Prior to the [IIRIRA], the INA assessed status on the basis of 'entry' as opposed to 'admission.'"). Under the entry doctrine, an alien who had entered the United States was entitled to greater procedural protections, including a deportation hearing. *Id.* The result was a system that rewarded aliens who illegally entered the country with greater procedural protections than those who properly applied for admission at the border.

---

[2] https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission [https://perma.cc/5GKM-JYGX].

Thus, the IIRIRA amended the INA to make admission, not entry, the relevant criterion for removal procedures. *Id.* The INA defines admission as "the *lawful* entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A) (emphasis added). By defining "applicants for admission" broadly enough to encompass both arriving aliens and illegal entrants, Congress removed the previously existing incentives to enter the country illegally.

### C.     Hererra-Hernandez's remaining arguments are not persuasive.

Elsewhere in his motion, Hererra-Hernandez argues that certain "heightened procedural protections" should apply. Dkt. No. 5 at 5–7. This is so, he contends, because *Addington v. Texas*, 441 U.S. 418 (1979)—a case concerning the standard of proof required for indefinite, involuntary civil commitment—mandates a clear and convincing evidence standard, and because "this undoubtedly is" a "parental rights case[]." *Id.*

But this is an immigration case governed by the INA, and Congress already built heightened safeguards into its statutory scheme. "The INA's comprehensive regulation of all immigration related issues . . . shows that the INA is 'an elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations.'" *De La Paz v. Coy*, 786 F.3d 367, 377–78 (5th Cir. 2015) (quoting *Bush v. Lucas*, 462 U.S. 367, 388 (1983)). The statute includes extensive provisions "specifically designed to protect the rights of illegal aliens." *Id.* at 376. Accordingly, the Court will not invent additional procedural protections not provided by Congress. "Once the legislature has chosen a remedial scheme, federal courts are not free to supplement it." *Id.* at 378.

**4.    Conclusion**

In light of the above facts and authorities, the Court denies Hererra-Hernandez's motion for a TRO (Dkt. No. 5). He fails to carry his burden to show a significant likelihood of success on the merits. Hererra-Hernandez's habeas petition (Dkt. No. 1) remains pending.

So ordered on November 19, 2025.

                                                  JAMES WESLEY HENDRIX
                                                  UNITED STATES DISTRICT JUDGE